**United States District Court**
For the Northern District of California

1

2

3

4                                                    **E-FILED on** ___7/13/07___

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   ALI MAZOUCHI ,                          No. C-06-07915 RMW

13                Plaintiff,                  ORDER DENYING DEFENDANTS'
                                             MOTION TO DISMISS
14        v.
                                             **[Re Docket No. 9]**
15   DAVID STILL, San Francisco District
     Director, U.S. Citizenship and Immigration
16   Services; EMILIO T. GONZALEZ, Director,
     United States Citizenship and Immigration
17   Services; MICHAEL CHERTOFF, Secretary of
     Department of Homeland Security; ROBERT
18   MUELLER, Director of Federal Bureau of
     Investigation,
19
                Defendants.
20

21        Defendants move to dismiss plaintiff's complaint for writ of mandate compelling defendants

22   to complete security checks and processing of plaintiff's application for legal permanent resident

23   status for lack of subject matter jurisdiction or, alternatively, failure to state a claim.  For the reasons

24   set forth below, the court DENIES defendants' motion to dismiss.

25                            **I.  BACKGROUND**

26        Plaintiff Ali Mazouchi ("Mazouchi") filed a complaint for writ of mandamus requiring

27   defendants to adjudicate his I-485 application of adjustment of status.  He also asks the court to

28   award him reasonable attorney's fees.  Compl. ¶ 38 (Prayer).  Plaintiff has sued defendants David

**United States District Court**
For the Northern District of California

1   Still, San Francisco District Director of U.S. Citizenship and Immigration Services ("USCIS"),

2   Emilio T. Gonzalez, Director of USCIS, Michael Chertoff, Secretary of the Department of

3   Homeland Security ("DHS"), and Robert S. Mueller, Director of the Federal Bureau of Investigation

4   ("FBI") in their official capacities.

5         Mazouchi is a native and citizen of Iran. *Id.* ¶ 3. He seeks to become a lawful permanent

6   resident of the United States as a beneficiary of a family-based adjustment of status based on his

7   marriage to a U.S. citizen. *Id at* ¶¶ 3-4.

8         On April 16, 2003, plaintiff Mazouchi filed a family-based adjustment of status application

9   with the USCIS San Francisco Office on his own behalf. *Id.* ¶ 10; "Form I-485", Opp'n, Ex. 3. The

10  FBI received a request from USCIS on or about September 23, 2003 to process a security clearance

11  on plaintiff. Decl. of Michael A. Cannon Supp. Defs.' Mot. Dismiss ("Cannon Decl.") ¶ 22.

12  According to the complaint, Mazouchi has repeatedly inquired as to the status of his application, and

13  USCIS has informed him that his adjustment application is pending name check clearance by the

14  FBI, and this appears to be the only reason for delay. Compl. ¶¶ 22-23. Plaintiff's I-485

15  Application has now remained pending over four years from the date of filing. *Id.* at ¶ 27.

16                                    **II. ANALYSIS**

17     **A.      Legal Standard**

18        Plaintiff bases subject matter jurisdiction in this case on federal question jurisdiction, 28

19  U.S.C. § 1331; the Mandamus Act, 28 U.S.C. § 1361; and the Administrative Procedures Act

20  (APA), 5 U.S.C. § 701 *et seq*. Under 28 U.S.C. § 1361, court may issue a writ of mandamus "to

21  compel an officer or employee of the United States or any agency thereof to perform a duty owed to

22  the plaintiff." However, "[m]andamus writs, as extraordinary remedies, are appropriate only when a

23  federal officer, employee, or agency owes a nondiscretionary duty to the plaintiff that is so plainly

24  prescribed as to be free from doubt. *Stang v. I.R.S.*, 788 F.2d 564, 565 (9th Cir. 1986) (citation and

25  internal quotation marks omitted). "[O]nly exceptional circumstances amounting to a judicial

26  usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary

27  remedy." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal

28  quotation marks and citations omitted). A plaintiff must show (1) his claim is "clear and certain";

1  (2) the official's duty to act is ministerial, and "so plainly prescribed as to be free from doubt"; and

2  (3) no other adequate remedy is available. *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994)

3  (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

4        Under the APA, "[t]o the extent necessary to decision and when presented, the reviewing

5  court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §

6  706(1). Further, "[w]ith due regard for the convenience and necessity of the parties or their

7  representatives and within a reasonable time, each agency shall proceed to conclude a matter

8  presented to it." 5 U.S.C. § 555(b). "[W]hen an agency is compelled by law to act within a certain

9  time period, but the manner of its action is left to the agency's discretion, a court can compel the

10  agency to act, but has no power to specify what the action must be." *Norton v. S. Utah Wilderness*

11  *Alliance*, 542 U.S. 55, 65 (2004). To invoke the APA, plaintiffs must show that (1) the agency had a

12  nondiscretionary duty to act, and (2) the agency unreasonably delayed in acting on that duty. *Gelfer*

13  *v. Chertoff*, 2007 WL 902382, *1 (N.D. Cal. 2007) (Alsup, J.) (citing *Norton*, 542 U.S. at 63-65; 5

14  U.S.C. §§ 555(b), 701(a)(2)).

15        **B.    Clear and Certain Claim**

16        "Where the duty in a particular situation is so plainly prescribed as to be free from doubt and

17  equivalent to a positive command, it is regarded as being so far ministerial that its performance may

18  be compelled by mandamus." *Wilbur v. United States*, 281 U.S. 206, 218-19 (1930). 8 U.S.C. §

19  1255(a) outlines the adjustment process for aliens lawfully admitted for permanent residence:

20        [t]he status of an alien . . . may be adjusted by the Attorney General, in his discretion
21        . . . if (1) the alien makes an application for such adjustment, (2) the alien is eligible
        to receive an immigrant visa and is admissible to the United States for permanent
22        residence, and (3) an immigrant visa is immediately available to him at the time his
        application is filed.

23        Although the Attorney General's decision of whether to grant or deny permanent residence to

24  an alien is discretionary, the government has conceded in *Gelfer* that it has a duty to *process* I-485

25  applications under 8 U.S.C. § 1255(a). 2007 WL 902382 at *2. 8 C.F.R. § 245.2 sets forth the

26  applicant's right to "be notified of the decision of the director, and, if the application is denied, the

27  reasons for the denial." Thus, it cannot be disputed that plaintiff, who has complied with the

28  requirements for eligibility under the statute, has a clear claim that his I-485 application be

United States District Court
For the Northern District of California

1    processed by defendants.  Further, as discussed in section B, *infra*, defendants' delay without

2    explanation is unreasonable as a matter of law.

3        **C.    Ministerial Duty to Act**

4        Defendants argue that plaintiff impermissibly requests this court to compel discretionary

5    agency action.  In the context of a writ of mandate, "§ 706(1) empowers a court only to compel an

6    agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without

7    directing how it shall act." *Norton*, 542 U.S. at 64 (citing the Attorney General's Manual on the

8    Administrative Procedure Act 108 (1947)).  However, here the relevant duty is whether plaintiff has

9    a clear right to have his I-485 application processed as set forth in the APA, a nondiscretionary

10   action.

        **1.    Nondiscretionary Duty**

11

12       Defendants have a nondiscretionary duty to process plaintiff's application.  In *Singh* and

13   *Gelfer*, the government conceded it had a *nondiscretionary duty* to process the plaintiff's I-485

14   applications under 8 U.S.C. § 1255(a).  *Gelfer*, 2007 WL 902382 at *2; *Singh v. Still*, 470 F. Supp.

15   2d 1064, 1067 (N.D. Cal. 2006) (Chen, M.J.).  As the *Gelfer* court explained, there is a difference

16   between the agency's discretion over *how to* resolve an application and its discretion as to *whether to*

17   resolve an application.  *Gelfer*, 2007 WL 902382 at *2 (citing *Singh*, 470 F. Supp. 2d at 1067.); *see*

18   *also Yu v. Brown*, 36 F. Supp. 2d 922, 931 (D.N.M. 1999).  Thus, defendants have a

19   nondiscretionary duty to act upon plaintiff's I-485 application and plaintiff has a right to have his

20   application processed.  *See Yu*, 36 F. Supp. 2d at 925 ("Administrative agencies do not possess the

21   discretion to avoid discharging the duties that Congress intended them to perform.") (citation and

22   internal quotation marks omitted).

23       **2.    Unreasonable Delay**

24       The second question is whether the now more than four year delay in processing plaintiff's I-

25   485 application is unreasonable.  Defendants argue that plaintiff has no right or entitlement to

26   have his application processed immediately or within any particular time frame.  While it is true

27   that no specific timeline applies to processing of I-485 applications, *see* Decl. of Constance Yuen

28   Supp. Defs.' Mot. Dismiss ("Yuen Decl.") ¶ 15, defendants clearly have to process the applications

without unreasonable delay.  *See* 5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); 5 U.S.C. § 706.  As the *Yu* court reasoned, "[a]lthough neither statute specifies a time by which an adjudication should be made, we believe that by necessary implication the adjudication must occur within a reasonable time.  A contrary position would permit the INS to delay indefinitely.  Congress could not have intended to authorize potentially interminable delays."  36 F. Supp. 2d at 932.

"What constitutes unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."  *Gelfer*, 2007 WL 902382 at *2 (quoting *Yu*, 36 F. Supp. 2d at 932).  Here, plaintiff filed his I-485 application on April 16, 2003.  Plaintiff has inquired as to the continued delay in processing his application and has been told only that the application is pending security clearance by the FBI.  Compl. ¶ 22.  According to USCIS, plaintiff's application will be adjudicated once the required security checks are completed.  Yuen Decl. ¶ 17.  The FBI processes name check requests from the USCIS chronologically based on the request date, and moves up in the queue certain applications that are qualified for expedited review.  *Id.* at ¶ 16.

Although Congress has not established a mandatory time frame in the INA for the USCIS to complete the adjudication, Congress sets a normative expectation and standard in "The Immigration Services and Infrastructure Improvements Act of 2000" of a reasonable processing time for an immigrant benefit application as no more than 180 days after initial application.  8 U.S.C. § 1571 ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . .").  Additionally, defendants concede that "[f]or most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits."  Yuen Decl. ¶ 13.  The USCIS website indicates that as of December 24, 2006, it was currently processing employment-based applications for adjustment received on June 15, 2006, over three years after it apparently received plaintiff's application.  "USCIS San Francisco Processing Dates," Opp'n, Ex. 4 at 1.

Delays, including lengthy ones, may be warranted because USCIS must await responses

from the FBI or other agencies or because additional investigation is needed. Yuen Decl. ¶ 13. In particular, FBI checks include (1) a name check, (2) a fingerprint check for past criminal background within the United States, and (3) an Interagency Border Inspection System ("IBIS") database query. *Id.* ¶ 4. Initial responses for name checks generally take about two weeks. Fact Sheet, *id.*, Ex. 1 at 2 (hereinafter "Fact Sheet"). In about 80 percent of cases, no matches are found. Fact Sheet at 2. Of the remaining 20 percent, less than one percent remain pending after six months. *Id.* Some cases "involve complex or highly sensitive information and cannot be resolved quickly." Yuen Decl. ¶ 4. Results of fingerprint checks are usually received within days (24-48 hours) and the vast majority of checks result in no criminal record. Fact Sheet at 2. Approximately 10 percent of fingerprint checks uncover criminal history, which may require additional information from the applicant. *Id.* Results of IBIS queries are "usually available immediately," but "in some cases information found will require further investigation." *Id.* Delays are caused when the USCIS is awaiting a background check response from the FBI or another agency, or if the response requires additional review by the USCIS or another agency. *Id.* In some cases, applications may take months or several years to resolve. *Id.* at 2-3.

Although the average times for processing applications and, in particular, FBI security checks, are not a *per se* measure of reasonableness of processing time, they offer a good indicator of whether a delay is reasonable. According to defendants' Fact Sheet, in most cases FBI background checks are processed fairly quickly. *Id.* at 2. Here, defendants state that Mazouchi's application is pending completion of the background check process. Yuen Decl. at 17; *see also* Opp'n, Ex. 9 at 4 ("the case is being delayed by the background check process."). This fails to explain why plaintiff's application has not been processed for more than four years, far beyond the 180 days recommended by Congress. *See* 8 U.S.C. § 1571. As in *Gelfer*, defendants do not point to a single action that has been taken to further plaintiff's particular application or a reason why plaintiff's application requires such an extended delay. 2007 WL 902382 at *2. Furthermore, *Yu* held that, "[D]elays of a significant magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork." *Yu*, 36 F. Supp. 2d at 934 (citations omitted). Likewise, "mere invocation of national security is not enough to

render agency delay reasonable per se." *Singh*, 2007 WL 289817.

Under these facts, and without a particularized explanation for the delay, the court finds the more than four year delay of plaintiff's application unreasonable as a matter of law. *See Gelfer*, 2007 WL 902382 at *3 (holding that a more than two year delay in processing I-485 application unreasonable as a matter of law); *Yu*, 36 F. Supp. 2d at 932 (holding that a two and a half year delay in processing a lawful permanent resident status application is on its face an unreasonable amount of time to process a routine application and requires an explanation).

### D.    No Other Adequate Remedy

In a petition for writ of mandate, plaintiff must show that no other adequate remedy exists.  This is "a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 381.  Here, plaintiff alleges that he has exhausted all administrative remedies and defendants do not dispute that plaintiff has done so.  Thus, the court finds that plaintiff has no adequate alternative remedy other than to seek judicial relief in the form of a writ of mandate.

### E.    No Jurisdiction Under the APA

Defendants cite *Heckler v. Chaney,* in which the Supreme Court interpreted 5 U.S.C. § 701(a)(2) to mean that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  470 U.S. 821, 830 (1985).  According to defendants, this court would "have to create a temporal standard from thin air" in order to have a standard by which to judge USCIS's adjudication of plaintiff's application.  As discussed above, however, although Congress did not set forth a time table or deadline for adjudication in § 1255(a), it is nonetheless clear that USCIS has a duty to adjudicate the adjustment applications within a reasonable period of time.  *Yu*, 36 F. Supp. 2d at 932; *see also Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) (even absent  statutory or regulatory deadlines, failure to take action in adjudicating applications runs afoul of section 555(b) or else "the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so.  Such an outcome defies logic--the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely.  This result is explicitly

1    foreclosed by the APA.").

2                      **E.      Dismissal of the FBI**

3           At the hearing, defendants moved for dismissal of the Director of the FBI from this action.

4    Plaintiff did not oppose the request.  Therefore the court shall dismiss the FBI from this action**.**

5                               **III.  ORDER**

6           For the foregoing reasons, the court DENIES Defendants' Motion to Dismiss for Lack of

7    Jurisdiction and Failure to State a Claim.  The court DISMISSES Defendant Robert S. Mueller, III,

8    Director of Federal Bureau of Investigations from the case.  The parties shall appear on September

9    14, 2007 at 9:00 a.m. for hearing on cross-motions for summary judgment, which shall be briefed

10   pursuant to Local Rule 7-2.

11

12

13   DATED:      7/10/07                          _Ronald M Whyte_____

14                                               RONALD M. WHYTE
                                                 United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

ORDER DENYING DEFENDANTS' MOTION TO DISMISS—No. C-06-7915 RMW
AEL                                               8

1

**Notice of this document has been electronically sent to:**

2

**Counsel for Plaintiff:**

3

Daniel Tzu Ken Huang          lawyer99@pacbell.net

4

**Counsel for Defendants:**

Edward A. Olsen               edward.olsen@usdoj.gov

5

6

7

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

8

**Dated:**      7/13/07                                          /s/ MAG

9                                                        **Chambers of Judge Whyte**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

ORDER DENYING DEFENDANTS' MOTION TO DISMISS—No. C-06-7915 RMW
AEL                                                    9